**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ICE CAP ADVENTURES LTD.

*Plaintiff,*

v.

REBECCA PIZZI a/k/a BECCA PIZZI
and JOSEPH STILWELL a/k/a JOE STILWELL,

*Defendants.*

Civil Case No: 26-cv-26949

**COMPLAINT**

Plaintiff, Ice Cap Adventures Ltd. ("Ice Cap") states the following in support of its Complaint against Defendants Rebecca Pizzi ("Rebecca") and Joseph Stilwell ("Joseph"; collectively "Defendants"), and in support there of allege as follows:

**NATURE OF THE CASE**

1. This is a civil action for civil conspiracy, abuse of process, tortious interference with advantageous business relationships, deceptive and unfair trade practices under Florida law, and defamation and defamation by implication.

2. Defendants were race-crew contractors, directors, and operational operatives for Runbuk, Inc. ("Runbuk"), a California company that organizes the World Marathon Challenge. While actively holding themselves out as race officials and crew members, Defendants engaged in an unlawful, coordinated campaign to manufacture the exact marketplace confusion that their principals later used as the basis to sue Plaintiff in this District.

3. Once they manufactured this public confusion, Defendants participated in an illicit plan to pervert the service of civil process issued by this Court into a staged press spectacle and public

relations ambush at Miami International Airport, deliberately intended to publicly humiliate Dr. David Kelly ("Dr. Kelly"), Ice Cap's principal ad public in front of his finishing athletes and damage Plaintiff's commercial business.

4. Runbuk filed the Runbuk Action on November 20, 2025, moving on the same day for an emergency preliminary injunction against Plaintiffyo, claiming that consumers were hopelessly confused between Ice Cap's race, The Great World Race, and Runbuk's World Marathon Challenge.

5. On July 30, 2026, United States Magistrate Judge Ellen F. D'Angelo issued a comprehensive Report and Recommendation recommending that Runbuk's motion for a preliminary injunction be denied in its entirety (ECF No. 124 in the Runbuk Action), which the Honorable Federico A. Moreno adopted by formal order on August 20, 2026 (ECF No. 127 in the Runbuk Action).

6. While that ruling was not a final merits determination on Runbuk's underlying trademark claims, it confirmed that Runbuk failed to demonstrate protectable trademark rights or secondary meaning. The evidence of marketplace confusion submitted to this Court by Runbuk was not organic, but had been intentionally, covertly manufactured by Runbuk's own race crew, specifically Defendants Rebecca Pizzi and Joseph Stilwell.

7. On November 14, 2024, while The Great World Race was actively taking place and Runbuk's crew monitored its livestream, Defendant Rebecca Pizzi wrote to Runbuk's principals in their group on WhatsApp: "I threw some stories up to confuse everyone. I won ." A fellow crew member replied: "Hahaha."

8. That statement is a direct admission of tortious intent. Defendant Rebecca Pizzi admitted publishing social media stories and planting World Marathon Challenge trademarks onto public

conversations regarding The Great World Race for the specific purpose of confusing the public about which race was which. This strategy of intentional and manufactured confusion by Defendants was at other times gathered by Runbuk and submitted to this Court as evidentiary exhibits in the Runbuk Action to support Runbuk's claims of consumer confusion.

9. One year later, on the night of November 20 to 21, 2025, Runbuk filed the Runbuk Action and obtained a summons for Dr. Kelly. Rather than serving Dr. Kelly at his home in Portugal, Runbuk, Defendants, and their process server ambushed Dr. Kelly as he landed at Miami International Airport with his runners who had just completed the Miami leg of The Great World Race.

10. Within minutes of that service, Runbuk's principals announced in the crew group that they wanted the airport service published as breaking news before The Great World Race concluded. Defendant Rebecca Pizzi immediately volunteered the direct telephone number of their media contact and woke Defendant Joseph Stillwell in the middle of the night to coordinate placement of the story and service photographs with the press.

11. That use of process—deployed not to afford lawful notice, but as an instrument of competitive embarrassment, public relations harassment, and commercial injury on Florida soil—constitutes an actionable abuse of process and an overt act of an unlawful civil conspiracy.

## PARTIES

12. Plaintiff Ice Cap Adventures Ltd. is a private company limited by shares, organized and existing under the laws of the Republic of Ireland, with its principal place of business at 74 Mountain Close, Cartron View, Sligo, F91 Y7K3, Ireland. Ice Cap is not a citizen of any State of the United States. Ice Cap is the sole owner, organizer, and commercial operator of The Great

World Race, an ultra-endurance event where athletes run seven marathons on seven continents in seven consecutive days. The face of Ice Cap is it's Principal, Dr. David Kelly.

13. Defendant Rebecca Pizzi, also known as Becca Pizzi, is a natural person, a citizen of the Commonwealth of Massachusetts, and is domiciled in Belmont, Massachusetts. At all times material hereto, Rebecca Pizzi worked as a race director, contractor, and social media operative for Runbuk events, including the World Marathon Challenge, and published commercial race content under her own name and through the shared account "Joe And Becca Pizzi."

14. Defendant Joseph Stillwell, also known as Joe Stilwell, is a natural person, a citizen of the Commonwealth of Massachusetts, and is domiciled in Belmont, Massachusetts. Joseph Stilwell is married to Rebecca Pizzi, is the co-operator of the shared account "Joe And Becca Pizzi," and operated under the corporate email address "joe@runbuk.com." At all times material hereto, Joseph Stilwell staffed commercial expo booths, posted race promotional materials, and served as the direct media conduit in the conspiracy. Joseph Stilwell was/is the Race Coordinator for Runbuk.

15. Non-party co-conspirators, who directed the crew group in which the unlawful acts were planned and executed, include:

(a) Renna Hu ("Hu"), a principal and corporate officer of Runbuk;

(b) Oliver Wang ("Wang") (who operated in the crew group under the moniker "Oliver North Pole"), a principal and corporate officer of Runbuk; and

(c) Josh Milne, a media and public relations operative whose contact information was held by Rebecca Pizzi and who was retained to coordinate emergency press coverage of the Miami airport service.

## SUBJECT-MATTER JURISDICTION

16. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this action is between citizens of a foreign state (Plaintiff Ice Cap citizen of Ireland) and citizens of a State of the United States (Defendants Rebecca Pizzi and Joseph Stilwell, citizens of Massachusetts), and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17. The amount in controversy substantially exceeds $75,000. Registration fees for The Great World Race are approximately €50,000 per participant. Defendants' intentional manufacture of confusion and defamatory campaign directly caused prospective participants to withdraw or decline participation, disrupted sponsor relationships, and caused substantial commercial damages.

18. In addition, Plaintiff is entitled under Florida law to recover as compensatory damages the substantial attorneys' fees and legal costs incurred in defending against the manufactured confusion claims in the Runbuk Action, where Defendants' tortious conduct and abuse of process directly subjected Plaintiff to that litigation. Dr. Kelly also suffered substantial personal reputational damage, professional humiliation, and emotional distress, supporting damages well in excess of the statutory threshold.

19. The amount in controversy further independently and comfortably exceeds the statutory threshold of $75,000 by virtue of Plaintiff's well-founded claim for substantial punitive damages against Defendants under Florida law. Punitive damages are properly aggregated and considered in determining whether the jurisdictional minimum is satisfied under 28 U.S.C. § 1332(a) unless it appears to a legal certainty that such a claim is unavailable. Here, Defendants engaged in intentional misconduct and gross negligence within the meaning of Fla. Stat. § 768.72 by consciously agreeing to manufacture false marketplace confusion, intentionally planting

trademarks on competing race feeds to deceive the public, staging a public ambush at Miami International Airport to harass and humiliate Dr. Kelly before his finishing runners, and coordinating an emergency press release to inflict maximum reputational and commercial destruction. This egregious, willful, and predatory conduct fully supports an award of punitive damages against each Defendant, thereby satisfying the amount in controversy requirement.

**PERSONAL JURISDICTION AND VENUE**

20. This Court has specific personal jurisdiction over both Defendants pursuant to Fla. Stat. § 48.193(1)(a)(2) because Defendants committed intentional tortious acts within and directed into the State of Florida.

21. Defendants directed defamatory and deceptive commercial statements into Florida, intentionally targeted endurance runners and participants finishing the Miami marathon leg of The Great World Race, and conspired to execute an abusive process and media ambush at Miami International Airport in Miami-Dade County, Florida.

22. Under established Eleventh Circuit and Florida law, committing a tortious act within Florida under Fla. Stat. § 48.193(1)(a)(2) does not require physical presence in the state where out-of-state electronic communications cause tortious injury within Florida (see *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283-84 (11th Cir. 2008)). Furthermore, under Florida's co-conspirator doctrine, the overt physical acts committed in Miami by Defendants' co-conspirators and process servers are legally attributable to Defendants for personal jurisdiction purposes.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Miami-Dade County within the Southern District of Florida, including the abusive execution of process at Miami International

Airport, the targeting of participants completing the Miami leg of the race, and the accrual of injury in this District.

24. Simultaneously with the filing of this Complaint, Plaintiff is filing a Notice of Related Action notifying the Court of the pending Runbuk Action, Case No. 1:25-cv-25413-FAM, currently pending before Judge Federico A. Moreno and Magistrate Judge Ellen F. D'Angelo.

## FACTUAL ALLEGATIONS

### A. The Competing Seven-Continent Marathon Events.

25. Plaintiff Ice Cap organizes, markets, and operates The Great World Race. The event challenges participants to run seven full marathons across all seven continents within seven consecutive days, with its final continental leg terminating in Miami, Florida.

26. Runbuk organizes a competing event designated as the World Marathon Challenge, which also involves seven marathons on seven continents in seven days, and which also terminates in Miami.

27. Both races cater to an extremely small, elite, and sophisticated consumer pool of ultra-marathon runners capable of paying entry fees of approximately $50,000.

28. Compounding the deceptive commercial environment fostered by Runbuk and promoted by Defendants, while Runbuk aggressively disparaged competitors over purported athletic legitimacy, Runbuk routinely fails to properly and accurately measure its own marathon courses—a material defect and deceptive trade practice that ultra-endurance runners paying substantial fees would never agree to if disclosed, and which underscores the bad-faith hypocrisy of Defendants' coordinated smear campaign branding Plaintiff's accurately staged event as a "fake race."

**B. Defendants' Deep Integration into Runbuk's Operations.**

28. Defendants were not casual contractors or outside observers. From at least August 2023, Defendants were completely integrated into Runbuk's operational apparatus.

29. On August 29, 2023, Defendant Joseph Stilwell created a WhatsApp group titled "The Wang Gang" to coordinate commercial strategy, race logistics, and aggressive competitive campaigns against rival events. (Screenshot from Wang Gang WhatsApp Group Chat below).

```
[29/08/2023, 23:22:16] The Wang Gang: Messages and calls are end-to-end encrypted. Only people
in this chat can read, listen to, or share them.
[29/08/2023, 23:22:16] Joe And Becca Pizzi : Joe And Becca Pizzi  created this group
[01/09/2023, 18:10:39] The Wang Gang: Oliver North Pole  added you
```

30. Both Rebecca Pizzi and Joseph Stilwell participated continuously in this group alongside Runbuk principals Renna Hu and Oliver Wang. Defendants took direct assignments from Hu and Wang, staffed commercial exposition booths at world-major marathons, operated the shared social media account "Joe And Becca Pizzi," and Joseph Stilwell conducted corporate business using the assigned email address joe@runbuk.com.

**C. Defendants Formulate and Execute the Confusion Scheme.**

31. In April 2024, at the Boston Marathon Expo, Defendants staffed the official Runbuk commercial booth. On April 13, 2024, at 00:15:42, the shared account "Joe And Becca Pizzi" reported to the group: "There were definitely a lot of people confused about the 2 races."

```
[13/04/2024, 00:15:42] Joe And Becca Pizzi : There were definitely a lot of people confused
about the 2 races
```

32. Minutes later, at 00:19:40, when discussing inquiries regarding Ice Cap's event, the shared account explicitly urged the deceptive strategy: "Give her fake info like there race."

```
[13/04/2024, 00:19:40] Joe And Becca Pizzi : Give her fake info like there race.
```

33. Later that morning, at 02:47:13, the shared account mocked a runner who inquired about Dr. Kelly, writing: "He thought Dave was the owner of our booth. Even his team is confused with his fake race."

```
[13/04/2024, 02:37:45] Joe And Becca Pizzi : I guess they were there today they must have left
early! The tall guy in the back approached me and asked where Dave was the owner at our booth.
[13/04/2024, 02:46:18] Oliver North Pole : "and asked where Dave was the owner at our booth."

I didn't get it
[13/04/2024, 02:47:13] Joe And Becca Pizzi : He thought Dave was the owner of our booth. Even
his team is confused with his fake race
```

34. In November 2024, Ice Cap commenced the inaugural edition of The Great World Race. Recognizing that Ice Cap was successfully conducting the continental circuit, Runbuk's principals directed the crew to monitor Ice Cap's broadcasts and harvest links to build an infringement case.

35. On November 13, 2024, at 18:45:54, Oliver Wang wrote in the crew group: "Indeed! And, it helps to prove Dave Kelly's fraudulent practices. Please share any links in the group, and I will document them."

36. The following day, November 14, 2024, the crew was actively watching the live broadcast of The Great World Race on Twitch. At 13:27:55, Defendant Rebecca Pizzi admitted in the crew group that she was actively planting confusion: "I threw some stories up to confuse everyone. I won ."

```
[14/11/2024, 13:27:55] Becca Pizzi: I threw some stories up to confuse everyone. I won .
```

37. Crew member Richard Eduard Dücker replied at 13:46:42: "Hahaha." At 15:26:48, Rebecca Pizzi confirmed she was surveilling Ice Cap's race feed: "Me too I was zooming in when he said Irish guys."

```
[14/11/2024, 13:46:42] Richard Eduard Dücker: Hahaha

[14/11/2024, 15:26:48] Becca Pizzi: Me too I was zooming in when he said Irish guys
```

38. "Stories" referred to ephemeral public broadcasts on Instagram and Meta social media platforms. "To confuse everyone" was the express predatory purpose. "I won" was Rebecca Pizzi's boast that her deceptive posts had successfully duped observers into confusing the two events.

39. Read in context with the surrounding messages, Rebecca Pizzi's admission confirms that she intentionally injected World Marathon Challenge trademarks, branding, and commentary into the public conversation surrounding The Great World Race, ensuring that runners, followers, and sponsors would mix up the events.

40. On November 16, 2024, after Wang flagged a competing account, the shared account instructed the crew to maintain the deceptive public engagement: "Don't block. Leave comments it's more effective."

```
[16/11/2024, 20:54:00] Joe And Becca Pizzi : Don't block. Leave comments it's more effective
```

41. On November 17, 2024, the shared account noted with satisfaction: "They tagged WMC." The deliberate strategy was to plant World Marathon Challenge marks directly under third-party and participant posts about The Great World Race rather than clarifying the separate origins of the events.

```
[17/11/2024, 15:01:09] Joe And Becca Pizzi : They tagged WMC.
[17/11/2024, 15:01:15] Ted Jackson: 😂😂😂
```

42. The November 2024 conduct was not an isolated episode. During the following year, Defendants and their co-conspirators continued to monitor Plaintiff, The Great World Race, and its participants, including by monitoring race livestreams and participants' social-media activity, scrutinizing runners' publicly available activity data, identifying individual The Great World Race participants for potential contact, and collecting and preserving material concerning Plaintiff and its runners. The crew's internal communications demonstrate an ongoing effort not merely to monitor a commercial competitor, but to manufacture and develop an evidentiary record against

Plaintiff, cultivate purported instances of marketplace confusion, and identify and approach persons associated with The Great World Race who could support Runbuk's developing claims. This continuing course of conduct bridged Defendants' November 2024 manufacture of marketplace confusion and Runbuk's November 2025 federal lawsuit, in which Runbuk presented purported evidence of that same confusion to this Court in support of emergency injunctive relief.

**D. The Manufactured Confusion is Deployed in Federal Court.**

43. Defendants executed this scheme in close coordination with Hu and Wang to manufacture a false evidentiary record of public confusion.

44. Exactly one year later, on November 20, 2025, Runbuk filed the Runbuk Action in this Court, alleging trademark infringement and false designation of origin.

45. To support its emergency motion for a preliminary injunction, Runbuk filed evidentiary exhibits purporting to demonstrate actual consumer confusion in the marketplace.

46. Those exhibits included the very social media posts that Defendants had manipulated. For example, in Exhibit 13, pg. 4 to Runbuk's motion (ECF No. 6-14 in the Runbuk Action) filed concurrently as *Exhibit 1* to this Complaint, Runbuk cited an Instagram post by participant Ashley Paulson (@ashkickn) and collaborators regarding The Great World Race, beneath which Runbuk operatives had planted the comment: "antarcticiceultra WORLD MARATHON CHALLENGE 7 MARATHONS 7 CONTINENTS 7 DAYS."

47. Similarly, in Exhibit 14, pg. 4 to Runbuk's motion (ECF No. 6-15 in the Runbuk Action) filed concurrently as *Exhibit 2* to this Complaint, Runbuk relied on screenshots of race posts regarding Great World Race runners (such as Brent Silkey) where Runbuk's affiliated accounts had commented: "antarcticiceultra world marathon challenge 7 marathons 7 continents 7 days."

48. The confusion presented to this Court as grounds for a preliminary injunction was the direct fruit of Defendant Rebecca Pizzi's broader strategy to elicit the confusion: "I threw some stories up to confuse everyone. I won ."

[14/11/2024, 13:27:55] Becca Pizzi: I threw some stories up to confuse everyone. I won .

**E. The Miami Airport Service Ambush and Media Conspiracy.**

49. On November 20, 2025, the same day Runbuk filed its federal complaint, the Clerk of Court issued a summons directed to Dr. David Kelly (ECF No. 1-11 in the Runbuk Action).

50. That summons listed Dr. Kelly's residence in Portugal: Rua Dos Lagos, 60d, 8600-281 Lagos, Portugal. Runbuk made no attempt to serve Dr. Kelly in Portugal through lawful international channels.

51. Instead, Runbuk and Defendants tracked Dr. Kelly's commercial charter flight carrying the runners who had just completed the six and of seven marathons in Miami.

52. On the night of November 20 to 21, 2025, a process server retained by Runbuk confronted Dr. Kelly at Miami International Airport as he landed in Miami-Dade County, Florida. Service was executed directly in front of the athletes, clients, and staff who had just crossed the finish line of The Great World Race.

53. Service of civil process is authorized under the Federal Rules of Civil Procedure solely to provide a defendant with lawful notice of an action and an opportunity to defend. Defendants and their co-conspirators did not use process for that purpose. Instead, they weaponized the process server and summons as a public relations weapon and an instrument of competitive destruction.

54. Runbuk's principals immediately reported the service in the crew WhatsApp group. On November 21, 2025, at 02:48:56, Oliver Wang messaged Defendants: "@Joe And Becca Pizzi connect me and @Renna with Josh now"

```
[21/11/2025, 02:48:56] Oliver North Pole : @Joe And Becca Pizzi  connect me and @Renna with Josh now
```

55. At 02:50:00, Wang announced: "Dave Kelly was served at Miami International airport."

```
[21/11/2025, 02:50:00] Oliver North Pole : Dave Kelly was served at Miami International airport.
```

56. At 02:53:11, Wang messaged the group: "do you know how to get this news on for tomorrow morning before their race ?" At 02:53:47, he praised their lawyers: "My litigator did very good job."

```
[21/11/2025, 02:53:11] Oliver North Pole : @Dave Painter Painter do you know how to get this news on for
tomorrow morning before their race ?
[21/11/2025, 02:53:47] Oliver North Pole : My litigator did very good job.
```

57. At 02:57:11, Defendant Rebecca Pizzi immediately joined the media coordination, offering: "Want me to wake up Joe? He fell asleep!"

```
[21/11/2025, 02:57:11] Becca Pizzi: Want me to wake up Joe? He fell asleep!
```

58. When Wang asked if Joe could contact the media publicist Josh Milne, Rebecca Pizzi answered at 02:57:49: "I have Josh number !"

59. At 02:57:50, Wang stated: "and we want to have a meeting to see how we can relaase this news." Rebecca Pizzi responded at 02:58:03: "Ok!! I'll wake him!"

```
[21/11/2025, 02:57:49] Becca Pizzi: I have Josh number !
[21/11/2025, 02:57:50] Oliver North Pole : and we want to have a meeting to see how we can relaase this
news
[21/11/2025, 02:58:03] Becca Pizzi: Ok!! I'll wake him!
```

60. At 02:58:27, Wang emphasized the commercial urgency of the news release: "but try to figure it out if we can have this news on before their race."

```
[21/11/2025, 02:58:27] Oliver North Pole : but try to figure it out if we can have this news on before
their race
```

61. At 04:05:05, Renna Hu uploaded a photograph of Dr. Kelly being served at the airport into the crew chat, stating at 04:05:12: "this is really nice shot," and adding at 04:05:24: "we need quality photos."

```
[21/11/2025, 04:05:05] Renna: <attached: 00008919-PHOTO-2025-11-21-04-05-05.jpg>
[21/11/2025, 04:05:12] Renna: this is really nice shot
[21/11/2025, 04:05:24] Renna: we need quality photos
```

62. At 05:10:30, Hu instructed Defendant Joseph Stilwell: "Email has been sent to you and Josh, and we've also included our litigators' email. This is in case you need to communicate with them while it's 3–4 AM San Francisco time for us. It would be ideal if Josh could have everything ready before 9 AM our time, so we can make a quick decision on how to release the news before their race concludes. Please also talk with Josh to see how we can be picked by news."

```
[21/11/2025, 05:10:30] Renna: @Joe And Becca Pizzi  Email has been sent to you and Josh, and we've also
included our litigators' email. This is in case you need to communicate with them while it's 3–4 AM San
Francisco time for us. It would be ideal if Josh could have everything ready before 9 AM our time, so we
can make a quick decision on how to release the news before their race concludes. Please also talk with
Josh to see how we can be picked by news. @Dave Painter Painter Please let us know if you have any
experience with emergency news release. Thanks.
```

63. On November 23, 2025, at 01:36:21, Hu further confirmed that a news release concerning the service of Dr. Kelly had already been prepared and that she was personally identified in it. Referring to a photograph of herself that she had considered using on her Facebook profile in connection with the anticipated publicity, Hu wrote: "Thank you for the thumb up for my facebook profile photo. I actually wanted to use the picture below as my name is in the news release, but there is no news about dave kelly was served yet, so I did not used it yet." This communication further confirms the existence of the prepared news release and the coordinated effort to generate publicity concerning the service of Dr. Kelly.

```
[23/11/2025, 01:04:36] Renna: https://www.law.com/radar/card/pm-61330270-runbuk-inc-v-ice-cap-
adventures-ltd
[23/11/2025, 01:36:21] Renna: Thank you for the thumb up for my facebook profile photo. I actually
wanted to use the picture below as my name is in the news release, but there is no news about dave kelly
was served yet, so I did not used it yet.
```

64. The timestamps set forth in paragraphs 31 through 62 reflect the export clock from the WhatsApp transcript, which Plaintiff will correlate to local Eastern Standard Time in discovery. The conduct occurred on Florida soil at Miami International Airport on or about November 20 to 21, 2025.

**F. Harm sustained by Plaintiff.**

65. Defendants' manufactured confusion and defamatory publications directly harmed Plaintiff's commercial operations. Potential participants and sponsors were deceived into believing that The Great World Race was an unlawful copycat, a fake event, or an infringing knock-off of Runbuk's race.

66. The staged airport service spectacle and coordinated media leak were specifically calculated to destroy Dr. Kelly's reputation in front of his finishing runners, inducing panic and doubt among high-net-worth clients who had just completed the race.

67. Furthermore, Plaintiff was forced to expend hundreds of thousands of dollars in legal fees and costs defending against the preliminary injunction in the Runbuk Action, an action built directly on the confusion Defendant Rebecca Pizzi intentionally manufactured.

**COUNT I: Abuse of Process**
**(against both Defendants)**

68. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

69. Legal process issued out of the United States District Court for the Southern District of Florida in the form of a summons and complaint directed to Dr. David Kelly.

70. Defendants willfully, maliciously, and in concert with Runbuk's principals, participated in the improper and perverted use of that process after its issuance for an immediate, collateral purpose not contemplated or permitted by law.

71. The lawful purpose of civil process is to provide a party with notice of a pending proceeding and an opportunity to appear.

72. Defendants deployed that process for an ulterior and collateral objective: to stage an ambush at Miami International Airport, capture high-resolution photographs of Dr. Kelly being served in the presence of his paying clients, awaken publicists in the middle of the night, and

coordinate an emergency media campaign to publish the event before The Great World Race concluded, all to humiliate Dr. Kelly, induce panic among his runners, and commercially destroy Plaintiff.

73. Defendant Rebecca Pizzi directly facilitated this abuse by providing media contact Josh Milne's telephone number and waking Joseph Stilwell, and Defendant Joseph Stilwell actively served as the designated liaison instructed to coordinate with Josh Milne and Runbuk's litigators to ensure the airport service was picked up by the news media.

74. As a direct and proximate result of Defendants' willful abuse of process, Plaintiff suffered severe commercial, professional, and reputational damages on Florida soil, in an amount to be determined at trial.

**COUNT II: Civil Conspiracy**
**(against both Defendants)**

75. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

76. Beginning on or before April 2024 and continuing through at least November 2025, Defendants entered into a knowing, willful, and unlawful agreement with each other and with non-party co-conspirators Renna Hu and Oliver Wang.

77. The unlawful objects of the conspiracy were: (a) to intentionally manufacture marketplace confusion between the World Marathon Challenge and The Great World Race; (b) to tortiously interfere with Plaintiff's business relationships with runners and sponsors; (c) to commit deceptive and unfair trade practices under Florida law; (d) to defame Plaintiff in their trade and business; and (e) to pervert the service of civil process into an abusive publicity spectacle to destroy Plaintiff's commercial standing.

78. In furtherance of this conspiracy, Defendants and their co-conspirators committed numerous overt acts, including:

1. Instructing crew members at the Boston Marathon Expo to distribute "fake info" regarding Plaintiff's race;

2. Authoring and publishing social media stories containing World Marathon Challenge trademarks on threads discussing The Great World Race specifically to "confuse everyone";

3. Posting misleading comments beneath participant feeds to ensure that race observers tagged the World Marathon Challenge;

4. Staging the service of process at Miami International Airport to capture photographs in front of Dr. Kelly's finishing runners; and,

5. Coordinating in the middle of the night to awaken liaisons and feed service photographs to media contact Josh Milne before the race concluded.

79. Under Florida law, each Defendant is jointly and severally liable for all overt acts committed by each other and by their co-conspirators in furtherance of the conspiracy.

80. As a direct and proximate result of the conspiracy, Plaintiff suffered substantial economic damages, lost entry fees, reputational harm, and consequential litigation expenses, in an amount to be proven at trial.

**COUNT III:**
**Tortious Interference with Advantageous Business Relationships**
**(against both Defendants)**

81. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

82. Plaintiff maintained established, advantageous business and contractual relationships with existing participants, prospective runners, elite athletic influencers (such as Becs Gentry), commercial sponsors, and logistics vendors for The Great World Race.

83. Defendants had actual knowledge of these advantageous business relationships, actively monitoring Plaintiff's Twitch livestreams, participant posts, race schedules, and the Miami finish line.

84. Defendants intentionally, maliciously, and without justification interfered with those advantageous business relationships by:

(a) Injecting false and confusing branding into public social media feeds to lead participants and sponsors to question the authenticity and legitimacy of The Great World Race;

(b) Feeding deceptive information to prospective runners at marathon expositions; and,

(c) Staging and publicizing the Miami airport service to Dr. Kelly's finishing runners before their race concluded.

85. Defendants acted with improper and predatory means, thereby forfeiting any competitive privilege.

86. As a direct and proximate result of Defendants' intentional interference, third parties, including prospective runners and commercial partners, terminated or declined to enter into business relationships with Plaintiff, causing substantial lost revenues and commercial damages.

## COUNT IV
## Florida Deceptive and Unfair Trade Practices Act (FDUTPA)
## Fla. Stat. § 501.201 et seq.
## (against Both Defendants)

87. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

88. At all times material hereto, Defendants engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8) by conducting advertising, marketing, and promotional activities directed at endurance athletes and consumers in Florida.

89. Defendants committed unfair, unconscionable, and deceptive acts and practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.204.

90. Specifically, Defendants disseminated misleading social media content, intentionally manufactured consumer confusion to fabricate an infringement claim, instructed crew members to feed false information to consumers, and weaponized civil process to damage a commercial competitor at its Florida finish line.

91. Plaintiff is a person aggrieved by Defendants' violations of FDUTPA and have suffered actual damages as a direct and proximate result.

92. Plaintiff is entitled to recover actual damages, permanent injunctive relief, and reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.211.

**COUNT V**
**Defamation and Defamation by Implication**
**(against both Defendants)**

93. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

94. Defendants published and caused to be published false, unprivileged statements and representations to third parties across digital platforms and at public expositions.

95. Defendants stated, published, and intentionally conveyed by implication that The Great World Race was a "fake race," that Dr. Kelly was running an illegitimate and counterfeit event, and that Dr. Kelly was infringing trademarks and defrauding runners.

96. These statements and implications were false. The Great World Race is a legitimate, independently organized, and lawfully operated ultra-endurance event owned exclusively by Ice Cap.

97. The statements and publications are defamatory per se under Florida law because they impeach Plaintiff in its profession, trade, and business, imputing dishonesty, fraud, and commercial illegitimacy.

98. Furthermore, by intentionally superimposing World Marathon Challenge marks onto public social media posts discussing The Great World Race, Defendants committed defamation by implication under Florida law, creating the false and defamatory impression among observers that Dr. Kelly was a trademark infringer illicitly passing off Runbuk's brand.

`[14/11/2024, 13:27:55] Becca Pizzi: I threw some stories up to confuse everyone. I won .`

99. Defendants acted with express common-law malice and constitutional actual malice. Defendants had actual knowledge of the falsity of their claims, celebrating: "I threw some stories up to confuse everyone. I won ."

100. Defendants republished and communicated the defamatory statements formulated in their WhatsApp chat—falsely branding The Great World Race as a "fake race," accusing Dr. Kelly of "fraudulent practices," and claiming he "ripped off" Runbuk's event—directly to third parties across the running industry, including commercial sports photographers hired for the Miami airport encounter, media publicists, race directors, expo attendees, participants, and sponsors, thereby imputing dishonesty, fraud, and professional illegitimacy to Plaintiff in its trade and causing severe reputational and commercial defamation per se under Florida law.

101. As a direct and proximate result of Defendants' defamatory publications, Plaintiff suffered presumed general damages, special damages, and severe reputational harm, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ice Cap Adventures Ltd. respectfully requests that this Court enter judgment in their favor and against Defendants Rebecca Pizzi and Joseph Stilwell, jointly and severally, as follows:

A. Awarding Plaintiff compensatory, consequential, and special damages against Defendants, including lost entry fees, lost profits, reputational harm, and defense expenses incurred as consequential damages, in an amount to be determined at trial;

B. Awarding Plaintiff actual damages and reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.211;

C. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 768.72 based on Defendants' intentional, willful, and malicious misconduct;

D. Entering a permanent injunction enjoining and restraining Defendants, their agents, and all persons acting in active concert with them from publishing confusing or defamatory statements regarding Plaintiff, and from publishing or exploiting photographs and materials regarding the service of process for competitive purposes;

E. Awarding Plaintiff pre-judgment and post-judgment interest and taxable costs; and,

F. Granting such other and further relief as this Court deems just and proper.

Dated: October 2, 2026

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
1826 Ponce De Leon Blvd.
Coral Gables, FL 33134
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

By: */s/ Ryan Clancy*
Ryan Clancy, Esq.
Florida Bar No. 117650
Email: ryan@business-esq.com
Email: service1@business esq.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 2, 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system and will be served upon Defendants Rebecca Pizzi and Joseph Stilwell concurrently with the Summons and Complaint in accordance with the Federal Rules of Civil Procedure, and a courtesy copy transmitted to counsel of record in Case No. 1:25-cv-25413-CIV-MORENO.

By: */s/ Ryan Clancy*
Ryan Clancy, Esq.

DEMAND FOR JURY TRIAL:
Plaintiff demands a trial by jury on all issues so triable.